UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ROBERT PAUL,

    Plaintiff,

v.

IMPACTOFFICE LLC,

    Defendant.

Civil Action No. TDC-16-2686

## MEMORANDUM OPINION

On July 26, 2016, Robert Paul filed a civil action against his former employer, ImpactOffice LLC ("Impact" or "the Company") seeking a declaratory judgment that he may work for W.B. Mason Company, Inc. ("W.B. Mason") without any restrictions and that the restrictive covenants in any employment agreement he has with Impact are unenforceable as a matter of public policy. On August 29, 2016, Impact filed an Answer and Counterclaim alleging that Paul breached the restrictive covenants in his employment agreement with Impact. Pending before the Court is Paul's Motion for Judgment on the Pleadings and to Dismiss the Counterclaim. For the reasons set forth below, the Motion is granted.

## BACKGROUND

Impact is a supplier of office products, office furniture, printing services, and related goods and services. Impact's service area centers on the Baltimore, Maryland and Washington, D.C. metropolitan areas but includes other localities. Impact has approximately 140 employees, 26 of whom are sales representatives, and it generated approximately $60 million in sales in

2015. Impact alleges that its business is dependent on several important factors, including its sales representatives' personal relationships with customers.

Paul worked as a sales representative for Impact, a various times, in the Baltimore, Washington, D.C., Philadelphia, and New York City metropolitan areas between 2008 and 2016. In the year prior to Paul's departure, his customers were responsible for approximately $2.2 million of Impact's sales revenue.

While working at Impact, Paul signed a Proprietary and Non-Solicitation Agreement ("the Agreement") that includes post-employment restrictions relating to potential competition with Impact or its "Affiliates." Under the Agreement, Impact's Affiliates consist of: ImpactOffice Group, LLC; Impact Office Products, LLC; George W. Allen Co.; N.B.A.; and Councell Computer Products. The Agreement contains a customer non-solicitation provision, under which the employee is not permitted to:

> Solicit or accept, directly or indirectly, the business of any customer or prospective customer of the Company, or its Affiliates, for the purpose of selling or distributing office products or services sold by the Company, or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company.

Agreement ¶ 2.2, Compl. Ex. A, ECF No. 1-1. "Customer" is defined as:

> any person or business to whom the Company, or its Affiliates, sold products or rendered services during the last 12 months Employee was employed by the Company and any person or business to or for which the Company, or its Affiliates, submitted or presented, or was in the process of submitting or presenting a bid, quote, proposal or agreement relating to the sales of any products or services, within the 12 month period immediately prior to the date on which Employee's employment with the Company terminated.

*Id.*

The Agreement also includes a non-competition provision, which applies only if the employee voluntarily leaves Impact. The provision states that a former employee may not:

> Become employed by a competitor . . . of the Company or its affiliates, located within a radius of ninety miles from any location of the Company or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company.

*Id.* at ¶ 2.3. "Competitor" is defined as companies that "sell office supplies, coffee & breakroom supplies, computer supplies, office furniture, printer maintenance repair and service, and any other products and services sold by the Company or its Affiliates." *Id.*

The Agreement contains two other provisions relevant to the resolution of the Motion: a choice-of-law clause and a severability clause. The former states that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the State of Maryland." *Id.* at ¶ 5.4. The latter provides that:

> The Employee agrees that to the extent that any provision or portion of this Agreement shall be held, found or deemed to be unlawful or unenforceable by a court of competent jurisdiction, then any such provision or portion shall be deemed to be modified to the extent necessary in order that any such provision or portion shall be legally enforceable to the fullest extent permitted by applicable law; and the Employee does further agree that any court of competent jurisdiction shall, and the Employee does hereby expressly authorize, request and empower any court of competent jurisdiction to, enforce any such provision or portion in order that any such provision or portion shall be enforced by such court to the fullest extent permitted by applicable law.

*Id.* at ¶ 4.1.

Paul is now employed by W.B. Mason, which also sells office supplies, office furniture, and related goods and services. Impact alleges that W.B. Mason is its direct competitor in Maryland and the Washington, D.C. metropolitan area and that Paul's new office is located within 90 miles of an Impact office. Impact also claims that Paul breached the Agreement by "knowingly connecting with and soliciting Impact's customers through LinkedIn in the days following his resignation." Countercl. ¶ 44.

## DISCUSSION

In his Motion for Judgment on the Pleadings, Paul argues that the restrictive covenants within his employment agreement with Impact are unenforceable because they are facially overbroad, such that he is entitled to a judgment as a matter of law. Specifically, Paul asserts that the non-competition provision is overbroad as written because the term "competitor" is defined too broadly and the geographic restriction and scope of proscribed activity are both unreasonable. He argues that the non-solicitation provision's prohibition on soliciting or even merely accepting business from any customers or prospective customers of Impact or its Affiliates, including those with whom he had no contact while employed by Impact and those who did not purchase any products from Impact, renders that covenant overbroad. Moreover, Paul contends that the Court cannot make these provisions enforceable by narrowing their scope through the use of "blue penciling" or the application of the severability provision in the Agreement.

### I. Legal Standards

Federal Rule of Civil Procedure 12(c) provides that "a party may move for judgment on the pleadings" after the pleadings have been filed. Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are "integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). In resolving a Rule 12(c) motion on the basis of the underlying merits, the court assumes the facts alleged by the nonmoving party to be true and draws all reasonable factual inferences in its favor, and judgment is appropriate only if the moving party establishes that no genuine issue of

material fact remains to be resolved and that the party is entitled to judgment as a matter of law. *See, e.g., Sanders v. Mountain America Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012); *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993); *Bell Atlantic-Maryland, Inc. v. Prince George's Cty.*, 155 F. Supp. 2d 465, 473 (D. Md. 2001). Such a motion can be used to obtain a declaratory judgment where the only dispute is the proper interpretation of contractual terms. *See Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 598 (7th Cir. 2004); *A. S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193-95 (4th Cir. 1964).

With respect to Paul's Motion to Dismiss the Counterclaim, the counterclaim must allege enough facts to state a plausible claim for relief to defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the [counterdefendant] is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the counterclaim as a whole, consider the factual allegations in the counterclaim as true, and construe the factual allegations in the light most favorable to the nonmoving party. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II. Motion to Supplement

As part of the briefing on the Motion for Judgment on the Pleadings, Paul has also filed a Motion for Leave to File Supplemental Points and Authorities in Support of His Motion for Judgment on the Pleadings and Motion to Dismiss the Counterclaim ("Motion to Supplement"). In the Motion to Supplement, Paul asks the Court to consider a transcript from an October 24,

2016 motions hearing in the related cases of *ImpactOffice LLC v. Siniavsky*, TDC-15-3481 (D. Md. filed Nov. 16, 2015), and *Chapman v. ImpactOffice LLC*, TDC-16-1851 (D. Md. Apr. 19, 2017). Impact does not dispute the authenticity of the transcript but asks the Court to deny Paul's request on the grounds that the transcript constitutes extrinsic evidence that was neither integral to nor explicitly relied upon in the pleadings. Because the hearing documented in the transcript consisted solely of oral argument by counsel in different cases, the Court does not consider the transcript to provide additional facts appropriate for consideration on a Motion for Judgment on the Pleadings. The Motion to Supplement is therefore denied.

### III. Choice of Law

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Maryland law recognizes the "ability of contracting parties to specify in their contract that the laws of a particular State apply in any dispute over the validity, construction, or enforceability of the contract," with limited exceptions that do not apply here. *See Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803-04 (Md. 2007). Because the Agreement includes a choice-of-law provision selecting Maryland law, and neither party advocates for the application of a different state's law, the Court applies Maryland law in resolving the Motion for Judgment on the Pleadings.

### IV. The 2014 Agreement

Impact first argues that the Court cannot enter judgment in favor of Paul because a genuine issue of material fact exists whether Paul signed an employment agreement in 2014, whether any such agreement contains post-employment restrictive covenants, and whether the 2012 or 2014 agreement is the operative agreement. In the Complaint, however, Paul does not

6

assert that he signed a 2014 agreement and challenges only the 2012 Agreement. In its Answer, Impact denies asking Paul to sign a new post-employment agreement with similar restrictive covenants in 2014. Likewise, in its Counterclaim, Impact alleges only that Paul breached the Agreement signed in December 2012, which it attached to the Counterclaim, and does not allege that Paul signed any other binding agreement. For purposes of this Motion, the Court assumes the facts alleged by the nonmoving party to be true and draws all reasonable factual inferences in its favor. Accepting Impact's allegations in its pleadings that the 2012 Agreement is the operative agreement between the parties, and noting that Paul agrees with that position, the Court concludes that any dispute whether another agreement was signed in 2014 is not material to the resolution of this matter. Because there is no genuine issue of material fact relating to a 2014 employment agreement, the Court will not deny Paul's Motion on this basis.

## V. Restrictive Covenants

In *Siniavsky* and *Chapman*, this Court has previously considered the enforceability of substantially similar restrictive covenants contained in employment agreements between Impact and other former employees now working for W.B. Mason. *ImpactOffice, LLC v. Siniavsky*, Nos. TDC-15-3481, TDC-16-1851, 2017 WL 1410773, at *1-2 (D. Md. Apr. 19, 2017) ("*Siniavsky II*"); *ImpactOffice, LLC v. Siniavsky*, Nos. TDC-15-3481, TDC-16-1851, 2016 WL 8672916, at *1-2 (D. Md. Nov. 18, 2016) ("*Siniavsky I*").[1] In those cases, after considering arguments substantially similar to those provided here, the Court concluded that those specific restrictive covenants were not enforceable as a matter of public policy. *Siniavsky II*, 2017 WL 1410773, at *4; *Siniavsky I*, 2016 WL 8672916, at *4, 8-9. Although there are minor factual

---

[1] *Siniavsky I* addressed the enforceability of the non-competition provision in *Chapman* and the non-solicitation provisions in *Siniavsky* and *Chapman*. *Siniavsky II* further addressed the enforceability of the non-solicitation provision in *Chapman*.

7

distinctions between the restrictive covenants in Paul and those at issue in *Siniavsky* and *Chapman*, the Court reaches the same conclusion here.

Under Maryland law:

> [F]or a restrictive covenant to be enforceable (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy.

*Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Silver v. Goldberger*, 188 A.2d 155, 158-59 (Md. 1963); *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515-16 (Md. 1990)). The "determination of enforceability should be made based on the scope of each particular covenant itself, and, if that, on its face, is not too broad, the facts and circumstances of each case must be examined." *Millward v. Gerstung Int'l Sport Educ., Inc.*, 302 A.2d 14, 16 (Md. 1973).

Maryland courts have recognized an employer's legally protected interest in preventing "diversion of . . . business to the former employee who has had personal contacts with customers which the employer lacks." *Tuttle v. Riggs-Warfield-Roloson*, 246 A.2d 588, 590 (Md. 1968); *see Silver v. Goldberger*, 188 A.2d 155, 158 (Md. 1963). "Persons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990). The goal of preventing the departure of goodwill generated by the former employee is distinguished from that of preventing efficient competition, which is not a legally protected interest. *See Silver*, 188 A.2d at 158. Here, Impact's sales representatives interact directly with customers and may establish personal relationships with them. Viewing the facts in the light most favorable to Impact, the Court finds for purposes of the Motion for Judgment on the

Pleadings that Impact has a legally protected interest in its customer goodwill. *See Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438 ("Restrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced, solicited, and were in constant contact with customers." (citing *Silver*, 188 A.2d at 158)); *Siniavsky I*, 2016 WL 8672916, at *3. The restrictive covenants at issue will be analyzed in light of this interest.

### A.     Non-Competition Provision

The non-competition covenant prohibits Paul, for six months after the termination of his employment with Impact, from working for a competitor of Impact or its Affiliates at a location within a 90-mile radius of any work location of Impact or its Affiliates. The scope of the proscribed activity is not limited to employment in positions similar to that which Paul held at Impact but instead would prohibit employment in any capacity at a competitor. The restriction is therefore wider than necessary and is not reasonably tailored to protect Impact's interest in preventing the loss of customer goodwill.

In this District, similar non-competition provisions have been deemed unenforceable under Maryland law due to overbreadth. For example, in *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771 (D. Md. 2015), the court held that a non-competition covenant that prohibited a former employee "from taking any job, no matter how unrelated to his prior sales work" with a direct or indirect competitor of the company or its affiliates and subsidiaries was "overly broad and not reasonably targeted to achieve Plaintiff's stated interest in protecting its goodwill." *Id.* at 775; *accord Seneca One Finance, Inc. v. Bloshuk*, No. RWT-16-cv-1848, 2016 WL 5851626, at *3 (D. Md. Oct. 5, 2016) (holding that a non-competition provision prohibiting the former employee from engaging in the "same or similar business" as the company was too "sweeping" to be enforceable because the restriction "is not limited to the work" that the former employee

9

performed at the company, "is far wider in scope than is reasonably necessary to protect the goodwill that [she] may have created with Seneca One customers," and "serves only to limit her potential employers"); *MCS Servs. v. Jones*, No. WMN-10-1042, 2010 WL 3895380, at *4 (D. Md. Oct. 1, 2010) (finding overbroad a restriction that prevented the former employee, a manager and sales representative, "from working for any competitor, regardless of whether his new responsibilities seek to exploit [the employer's] goodwill").

The United States Court of Appeals for the Fourth Circuit has, in analogous contexts, applied this same reasoning. In applying Maryland law to a restrictive covenant prohibiting former employees from engaging "in any activity which may affect adversely" the employer's interests, the Fourth Circuit held that the provision was exceedingly overbroad because it "seem[ed] designed to prevent any kind of competition" as opposed to being "specifically targeted at preventing [the employees] from trading on the goodwill they created." *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 437-38. In *RLM Communications, Inc. v. Tuschen*, 831 F.3d 190 (4th Cir. 2016), the court applied this reasoning to a non-competition agreement governed by North Carolina law which forbade the former employee from "directly or indirectly participat[ing] in a business that is similar to a business now or later operated by Employer in the same geographical area." *Id.* at 196. The court concluded that the prohibition was overbroad because "[i]nstead of focusing on employment that raises the risk that [the former employee] will use knowledge obtained from" the former employer to that company's detriment, "the Noncompete targets the similarity of a new employer" to the former employer. *Id.* at 197.

Based on this precedent, this Court concluded that the non-competition provision in *Chapman* was unenforceable. *Siniavsky I*, 2016 WL 8672916, at *4. The non-competition provision of the Agreement here contains identical language. As in *Chapman*, it focuses on the

nature of the competitor rather than the work performed by the former employee. The language of the provision would bar Paul from working for an Impact competitor in any position, even if that position afforded him no opportunity to take advantage of any personal relationships with customers that he had developed while at Impact. Such a provision does not reflect a narrowly tailored approach to safeguarding customer goodwill. Instead, the exceedingly broad language serves as a general hindrance to competition, an unprotected interest. The Court therefore concludes that the non-competition provision is facially overbroad and thus unenforceable. *See Siniavsky I*, 2016 WL 8672916, at *4; *see also Medispec, Ltd.*, 133 F. Supp. 3d at 775. Having so found, the Court need not address Paul's additional arguments that the provision's definition of competitor and its geographic limitation are sufficiently overbroad as to render the provision unenforceable.

### B. Non-Solicitation Provision

The non-solicitation provision in the Agreement prohibits Paul from:

> Solicit[ing] or accept[ing], directly or indirectly, the business of any customer or prospective customer of the Company, or its Affiliates, for the purpose of selling or distributing office products or services sold by the Company, or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company.

Agreement ¶ 2.2. Other than the duration of this provision and its broader definition of "customer," it is identical to the non-solicitation provision that this Court found to be unenforceable in *Siniavsky* and *Chapman*. *Siniavsky II*, 2017 WL 1410773, at *4; *Siniavsky I*, 2016 WL 8672916, at *5, 8-9. In that instance, the Court found that this provision is facially overbroad in two ways: by prohibiting a former employee from (1) "accept[ing]" business from any Impact customer and (2) soliciting business from any "prospective customer" of Impact.

*Siniavsky I*, 2016 WL 8672916, at *8-9. The Court reaches the same conclusion about the non-solicitation provision of Paul's Agreement.

First, the restriction on accepting business from Impact customers is unreasonable because an employer's protectable interest is in "preventing an employee from *using* the contacts establishing during employment to pirate the employer's customers." *Holloway*, 572 A.2d at 515 (emphasis added). A bar on mere passive acceptance of unsolicited business prohibits activity that necessarily involved no use of prior customer relationships. Under this provision, a former employee would breach the agreement by taking an unsolicited telephone order from any company that had previously bought office supplies from Impact, even if the former employee had never interacted with that company and had no knowledge of its prior dealings with Impact. Without any requirement that the former employee have such knowledge, the bar on accepting business is not reasonably tailored to address that concern.

Second, the bar on soliciting Impact's "prospective customers," which includes those with whom the former employee may have had no personal contact, further renders the non-solicitation provision overbroad. *See Hebb v. Stump, Harvey & Cook, Inc.*, 334 A.2d 563, 570 (Md. Ct. Spec. App. 1975) (finding that the trial court correctly determined that a restriction on solicitation of "prospective customers" was unenforceable); *see also Seneca One Fin., Inc.*, 2016 WL 5851626, at *5 (finding a restriction on solicitation of individuals or entities who "have been in contact" with the employer about potential business to be "breathtaking in scope" and overbroad). A prospective customer, under the plain meaning of the term, has not previously done business with Impact and thus would not have been the subject of customer goodwill generated by a former Impact sales representative. Moreover, the term "prospective customer" of Impact would encompass virtually any company with a need to purchase office supplies, even

if the former employee had no knowledge that the company had ever interacted with Impact, and even if the company had never interacted with Impact at all.

As in *Siniavsky* and *Chapman*, however, the Court does not conclude that the restriction on soliciting all "customers" of Impact and its Affiliates is facially overbroad. Agreements that restrict former employees from soliciting all clients of a former employer, rather than only those with whom the former employer worked directly, are generally disfavored by Maryland courts. *See PADCO Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 608 (D. Md. 2002); *see also Severn Mktg. Assocs., Inc. v. Doolin*, No. CCB-09-3295, 2010 WL 3834994, at *4 (D. Md. Sept. 29, 2010). Impact argues that the Maryland Court of Appeals has upheld restrictive covenants prohibiting solicitation of all customers of a company, without limitation. The primary cases supporting this proposition, however, did not actually involve such a broad non-solicitation agreement. In *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 246 A.2d 588 (Md. 1968), although there was a restrictive covenant barring a former employee "from engaging directly or indirectly, in any insurance activities with customers" of Riggs-Warfield-Roloson, the basis for the action was the alleged violation of a modification to that covenant that narrowed the restriction to a specific former client company. *Id.* at 589-90. The court's holding that the former employee's solicitation of that particular client breached the contract therefore does not support the broad proposition that restrictions on solicitation of all customers cannot be deemed facially overbroad. *Id.* at 590-91. Likewise, in *Gill v. Computer Equipment Corporation*, 292 A.2d 54 (Md. 1972), the court upheld a restrictive covenant against "selling or servicing the products" of a manufacturer represented by the company's Peripheral Systems Division. *Id.* at 58-59. In so doing, however, the court highlighted that the "scope of the limitation" was to customers of that

Division, which was "the narrow area" in which the former employee worked, not the entire company. *Id.* at 59.

Rather, courts interpreting Maryland law have adopted the view that a restrictive covenant barring solicitation of all of a company's customers must instead be reviewed with consideration of the specific facts and circumstances at issue. *See Fowler v. Printers II, Inc.*, 598 A.3d 794, 802 (Md. Ct. Spec. App. 1991); *Holloway v. Faw, Casson & Co.*, 552 A.2d 1311, 1321 (Md. Ct. Spec. App. 1989), *rev'd in part on other grounds*, 572 A.2d 510 (Md. 1990). In this District, courts have upheld certain non-solicitation clauses applying to all customers of a company under the specific facts of the case. For example, in *Severn Marketing Associates, Inc.*, the court held that a provision barring solicitation of any of the company's "Principals," consisting of manufacturing companies to whom the company provided sales and marketing services, was not facially overbroad where there was an allegation that the former employee in fact had had contact with all 16 of the company's Principals. 2010 WL 3834994, at *4-5 (denying a motion to dismiss); *see also Allegis Grp., Inc. v. Jordan*, No. GLR-12-2535, 2014 WL 2612604, at *8 (D. Md. June 10, 2014) (finding a covenant barring solicitation of any company client over the past two years to be "reasonable and enforceable" on the facts of the case). Thus, the Court declines to hold that the clause barring solicitation of all customers is facially overbroad as a matter of law.

Nevertheless, the Court may consider, based on the facts and circumstances set forth in the pleadings, whether the non-solicitation provision is overbroad and thus unenforceable. Here, the facts presented in the pleadings establish that the scope of the customer non-solicitation provision is "wider . . . than is reasonably necessary to protect the employer's interest." *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438 (citing *Silver*, 188 A.2d at 158-59;

*Holloway*, 572 A.2d at 515-16). Impact does not assert in its Counterclaim that Paul had contact with all of Impact's customers. To the contrary, it alleges that in the year prior to his resignation from Impact, Paul's customers generated $2.2 million in sales, which was less than five percent of the $60 million in Impact sales over the same time period. Paul was only one of 26 Impact sales representatives. Even viewed in the light most favorable to Impact, the allegations can only be read to establish that Paul's customer base was only a limited portion of the customer base of Impact and its Affiliates, and that there were segments of that customer base with which he never interacted. Thus, upon consideration of the undisputed facts, the restrictive covenant barring solicitation of all Impact customers is not reasonably tied to Impact's interest in protecting customer goodwill because it covers a significantly larger customer base than that with which Paul could have developed personal relationships.

Courts applying Maryland law to the facts and circumstances surrounding restrictive covenants regularly deem those that restrict solicitation of customers beyond those with whom a former employee engaged in direct business dealings to be overbroad and unenforceable because they serve not to protect goodwill, but to restrict competition. *See, e.g., Deutsche Post Glob. Mail, Ltd. v. Conrad*, 292 F. Supp. 2d 748, 755-56 (D. Md. 2003), *aff'd* 116 F. App'x 435 (4th Cir. 2004) (concluding that a restrictive covenant barring solicitation of all company customers was overbroad where the company had a global customer base and the former employees "developed comparatively few customer relationships in the limited area of Maryland, Virginia, and Washington, D.C."); *Holloway*, 552 A.2d at 1319-21 (holding that where a partnership had six offices in Maryland and Delaware but the former employee worked out of only the Salisbury, Maryland office, the partnership agreement was "unreasonable to the extent that it prohibits the employee from soliciting the business of those clients with whom the former employee did not

himself have direct contact while employed by the partnership"). Likewise, the non-solicitation clause of the Agreement, which restricts solicitation of all Impact customers without limitation, is overbroad and unenforceable as applied to Paul. Having found that the scope of the restrictive covenant is broader than is reasonably necessary, there is no need to consider additional factors. *See Siniavsky I*, 2016 WL 8672916, at *9. Nor is it necessary to address Paul's additional argument that the specific definition of customer, which is broader than the definition in *Siniavsky* and *Chapman* in that it includes "any person or business to or for which the Company, or its Affiliates, submitted or presented, or was in the process of submitting or presenting a bid, quote, proposal or agreement relating to the sales of any products or services" within 12 months of Paul's termination of employment with Impact, itself renders the non-solicitation provision overbroad.

## VI. Narrowing the Restrictive Covenants

Impact argues that even if the restrictive covenants are deemed to be overbroad, they can nevertheless be enforced to the limited extent of barring Paul from soliciting customers with whom he had prior interactions while employed by Impact, whether based on the doctrine of blue penciling the severability clause of the Agreement, or Maryland case law precedent. The Court considered and rejected these arguments in *Siniavsky* and reaches the same conclusion here. *See Siniavsky I*, 2016 WL 8672916, at *6-9.

If a court finds that a restrictive covenant is overbroad, it may nevertheless preserve and enforce the covenant by excising, or "blue penciling," unreasonable language. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 439 (citing *Tawney v. Mut. Sys. of Md.*, 47 A.2d 372, 379 (Md. 1946)). "A court may only blue pencil a restrictive covenant if the offending provision is neatly severable." *Id.* In particular, a court may not excise "the dominant language or words" from a

covenant that is part of a "single indivisible promise." *Id.* at 440 (holding that excising an overarching promise in a single-sentence restrictive covenant, "leaving only a narrower example of the original, broader restriction," was impermissible). Moreover, a court cannot supplement, rearrange, or otherwise rewrite language. *See Fowler*, 598 A.2d at 802; *see also Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 439. Although Impact urges the Court to apply the "flexible approach" to blue penciling under which a court may add language or rewrite a covenant to conform to the parties' reasonable expectations, the Maryland Court of Appeals has not adopted the flexible approach. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 440 (stating that the Maryland Court of Appeals in *Holloway* expressly refused to address the validity of the approach and noting that "no Maryland court has [since] endorsed or discussed the flexible approach").

Here, the non-competition covenant in the Agreement cannot be blue penciled to render it reasonable. There is no language that can neatly be stricken to address its overbreadth. Instead, preserving the non-competition provision would require supplementing the contract language to narrow the scope of the proscribed activity. The Court might, for example, have to add language limiting the restriction to certain types of positions consistent with Paul's prior work at Impact. Such a change would constitute an impermissible rewriting of the contract.

As for the customer non-solicitation restriction in the Agreement, the Court concludes that the "or accept" and "or prospective customer" restrictions can be excised under the blue pencil rule as applied under Maryland law. In *Hebb*, the court rejected the argument that a finding that a covenant's overbroad restriction on solicitation of prospective customers rendered the entire agreement unenforceable and instead upheld the blue penciling of a reference to "prospective customers who were being actively solicited by us" at the time of termination and the subsequent enforcement of the provision as to existing customers only. 334 A.2d at 570-71.

The Court of Special Appeals has also concluded that language extending non-solicitation restrictions beyond existing customers to businesses who "shall have submitted a bid" or were "in the process of submitting a bid" could be blue penciled "entirely in accord with Maryland law." *Fowler*, 598 A.2d at 802. The potential excisions in this case are likewise "not so interwoven as to be logically inseparable." *Hebb*, 334 A.2d at 569; *cf. SNS One, Inc. v. Hage*, No. L-10-1592, 2011 WL 2746713, at *2 (D. Md. July 11, 2011) (excising, from a covenant barring a former employee from working for or associating with other businesses "competitive" with the company, a restriction on such activities with companies that were "the same as" or "similar to" the company). Notably, these limited excisions would not remove the dominant language in the provision. *See Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 440.

The severability clause of the Agreement does not provide a basis to go any further. That provision states that any unenforceable provision "shall be deemed to be modified to the extent necessary . . . [to] be legally enforceable *to the fullest extent permitted by applicable law*" and that the former employee "authorize[s], request[s], and empower[s] any court of competent jurisdiction" to enforce any provision or portion of the agreement found to be unenforceable "*to the fullest extent permitted by applicable law*." Agreement ¶ 4.1 (emphasis added). Because Maryland law provides that alterations to the contract are limited by the blue penciling doctrine, and this provision does not authorize severance that goes beyond the bounds of Maryland law, it does not provide a basis to permit any modifications beyond the blue penciling described above.

Thus, the Court utilizes blue penciling to excise language that renders the non-solicitation provision facially overbroad and is left with the following provision stating that the former employee may not:

> Solicit ~~or accept~~, directly or indirectly, the business of any customer ~~or prospective customer~~ of the Company or its Affiliates, for the purpose of selling

or distributing office products or services sold by the Company or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company.

It may not and does not go further to re-write the provision to narrow its enforcement to customers with whom Paul had prior sales relationships.

Finally, Impact claims that even if the non-solicitation clause is overbroad, because Impact seeks injunctive relief and monetary damages relating only to clients with whom Paul had worked, the Court should construe the Agreement as applying only to this subset of Impact customers. Such a rule, however, would conflict with the limits on judicial modification of a restrictive covenant delineated in the blue penciling doctrine. Indeed, in *Deutsche Post Global Mail*, the employer made essentially the same request, to narrow the scope of review to instances of solicitation of customers with whom the former employee had prior contact and to "focus solely on the facts of each alleged breach to determine whether an award of damages would be reasonable." 116 F. App'x at 441. The Fourth Circuit rejected the employer's approach in part because under that proposed interpretation of Maryland law, "an employer could draft a covenant that is unreasonably broad in scope, knowing that it could recover damages for any breach held to violate an interest that was reasonably deserving of protection," thereby giving "employers no incentive to negotiate reasonable restrictive covenants in the first place." *Id.* The court distinguished the Maryland Court of Appeals decision in *Holloway*, relied upon by Impact here, as not having applied such a judicial narrowing but instead having simply noted *in dicta* that the damages awarded in that case were limited to those arising from solicitation of persons actually served by the former employee at his former company. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 441 (discussing *Holloway*). Here, to permit Impact to reframe the non-solicitation provision so as to avoid a finding of overbreadth would likewise provide no incentive for Impact

19

or other employers to tailor their restrictive covenants narrowly to those reasonably protectable interests. The Court therefore declines to narrow the non-solicitation provision on this basis in order to render it enforceable.

## VII. Counterclaim

Based on the overbreadth of the restrictive covenants, the Court finds them unenforceable, such that Paul is entitled to the declaratory judgment he seeks in the Complaint. In turn, because the restrictive covenants are unenforceable, Impact's breach of contract counterclaim, based on those provisions, cannot succeed. Accordingly, the Court will grant the Motion for Judgment on the Pleadings and to Dismiss the Counterclaim.

## CONCLUSION

For the foregoing reasons, Paul's Motion for Judgment on the Pleadings and to Dismiss the Counterclaim is GRANTED. A separate Order shall issue.

Date: June 6, 2017

THEODORE D. CHUANG
United States District Judge